MISSOURI, K. & T. RY. CO. OF TEXAS v. SULLIVAN.

(Court of Civil Appeals of Texas. Austin. Feb. 19, 1913. On Motion for Rehearing, May 7, 1913.)

1. DEPOSITIONS (§ 88*)—FOUNDATION—PROOF.

Even though it were permissible, in offering the deposition of plaintiff's wife in evidence, to show that she was unable to attend court on account of sickness, such proof should not have gone into details by showing that she had previously had two surgical operations performed and had been in the hospital.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 234–236½, 242–245; Dec. Dig. § 88.*]

2. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Judgment will not be reversed for error in admitting evidence over objections, where the same facts were shown by the testimony of other witnesses without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

3. DAMAGES (§ 166*)—ADMISSIONS.

Where, at the time a letter written to defendant by plaintiff's attorneys, stating that plaintiff's damages were $500, plaintiff had already suffered a considerable part of his injuries, and his attorneys must have known that he was entitled to compensation for future suffering, the letter was admissible in evidence in a subsequent action by plaintiff for $30,500 for such injuries.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 478, 479, 481; Dec. Dig. § 166.*]

4. EVIDENCE (§ 213*)—"COMPROMISE."

Plaintiff's counsel, before the bringing of the present action, wrote to defendant stating that they thereby handed to defendant's agent plaintiff's claim and asked that the matter be taken up so as to give defendant an opportunity to settle it without suit, and that, if a satisfactory settlement was not had, they would be compelled to sue, and further stated, after reciting the nature of the injuries, that plaintiff had never fully recovered from the effects of the injury, and alleged his damages to be $500, "which is offered as a compromise. Please have the company take the matter up with us if it desires to make settlement." Held, that the letter was not an offer to compromise within the rule excluding it from evidence as such, since $500 was the full amount of the claim made therein, and the letter did not purport to offer to reduce such amount.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 745–751, 753; Dec. Dig. § 213.*

For other definitions, see Words and Phrases, vol. 2, pp. 1374–1375; vol. 8, p. 7609.]

5. APPEAL AND ERROR (§ 1050*)—EXCLUSION OF EVIDENCE—REVERSAL.

Error in excluding a letter written by plaintiff's attorneys to defendant railroad company before bringing the present action for $30,500 damages, stating that plaintiff's claim

was for $500 damages, required the reversal of a judgment for plaintiff for $8,400.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

Appeal from District Court, Williamson County; Chas. A. Wilcox, Judge.

Action by S. D. Sullivan against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Alex S. Coke, of Dallas, Spell & Sanford, of Waco, and Luther Nickels, of Austin, for appellant. Nunn & Love, of Georgetown, for appellee.

KEY, C. J. This is a personal injury suit in which the plaintiff laid his damages at $30,500. The substance of the pleadings of the respective parties is set out as follows in appellant's brief: The plaintiff alleged: "That on the 15th day of November, 1910, he was a passenger on one of defendant's passenger trains traveling from Temple, Tex., to Georgetown, Tex. That on the occasion of the arrival of the train at the latter place, and after the station had been announced and the train brought to a complete stop, and while the passengers thereon were preparing to leave and leaving the train, plaintiff arose from his seat preparatory to leaving the train when the train operatives suddenly, carelessly, and negligently, and without warning, caused the car in which plaintiff was riding to be suddenly and violently started, lurched, or jerked forward with great force and violence, and caused the plaintiff to be thrown or jerked backward with great violence against the arm of the seat in the rear of plaintiff, causing said arm of said seat to strike plaintiff below, on, and near and by the side of his anus, and on and by and near his coccyx, severely bruising, wounding, and injuring said plaintiff at and on said parts. That by reason thereof a large and painful abscess was caused to form at the place of said bruise or injury, and that by reason of said injury and abscess the tissues, ligaments, and muscles of plaintiff's anus were broken down, consumed, and destroyed, and the tissues, ligaments, and walls of plaintiff's rectum were broken down, consumed, and destroyed, and the fecal matter in plaintiff's intestines is diverted from its natural channel and caused to exude from a channel formed by said abscess; and the fatty tissues and cushions and ligaments and muscles of plaintiff's buttocks were and are destroyed and consumed and have perished, and plaintiff has permanently lost control of the sphincter muscle controlling his anus and his coccyx was fractured, dislocated, and permanently injured. Wherefore plaintiff has been seriously and permanently injured in the manner above alleged, and has been caused to suffer, and will as long as he lives continue to suffer, great physical and mental pain and anguish and has been forced to pay and become liable for the reasonable and necessary sum of $750 for medicine, medical attendance and attention, nurse hire, and hospital fees in caring for said injuries. The defendant answered with special exceptions and a general demurrer, which were overruled, with a general denial and special answers denying that it was guilty of the acts of negligence and wrongs charged against it, alleging contributory negligence on the part of the plaintiff in arising from his seat before the train had come to a standstill and before the announcement of its arrival at the station for the disembarking of passengers as the proximate cause of his injury, and alleged that plaintiff's injury, if any, was caused by the acts of the plaintiff long prior to the time of the accident, and were not caused by any negligence or want of care upon the part of the defendant." There was a jury trial, which resulted in a verdict and judgment for plaintiff for $8,400, and the defendant has appealed.

Appellant's brief contains 180 printed pages, and presents and discusses 17 different assignments of error, none of which, with one exception, point out sufficient reason for a reversal of the case. Many objections are urged against the court's charge and the refusal of requested instructions; but the objections referred to are without merit. Considering the charge as a whole and in connection with certain instructions requested by appellant which were given, it presented the law of the case to the jury with reasonably accuracy and with great fairness to appellant. Several assignments are predicated upon rulings made concerning the admissibility of testimony, but in this regard we find no reversible error.

[1] However, we think the court should have sustained some objections that were urged to testimony as to the details of the ill health, present and past, of the plaintiff's wife. Conceding that it was permissible, in offering her deposition in evidence, to show that she was unable to attend court on account of bad health, still the court should not have permitted the plaintiff to extend that proof as far as it went by showing that she had previously had two surgical operations and been confined in a sanitarium.

[2] But, as these facts were, in substance, proved by the testimony of other witnesses that was not objected to, the case will not be reversed on account of the error referred to.

[3] We sustain the thirteenth assignment of error, which complains of the ruling of the court in refusing to admit in evidence a certain letter addressed by the plaintiff's attorneys to the defendant's local agent at Georgetown, Tex. The letter referred to read as follows: "Georgetown, Texas, 1—19—1911.

Mr. H. E. Pye, Local Agent M., K. & T. Ry. Co. of Texas—Dear Sir: We hand you the following claim in favor of Mr. S. D. Sullivan of this county, and ask you to take the matter up with your company, and give the company an opportunity to settle same without suit; in the event it desires to do so. Of course, if a satisfactory settlement is not had, we will be forced to sue. Mr. Sullivan's cause of action is as follows: That on or about the 15th day of November, 1910, in bringing his wife to this place from the hospital at Temple, he and his said wife became passengers upon one of your company's trains. That upon reaching Georgetown, and after the station had been announced and the train had stopped and passengers had begun to alight, he got up with his baby in his arms and reached over to pick up his grip, and that while he was in this position the train was suddenly moved forward and the sudden movement threw him backward with considerable force, and he fell upon the arm of the seat, the said arm of the seat striking him just below and by the side of his anus, severely bruising him at said place; that although the said injury pained him a great deal at the time, he did not at said time consider it a serious injury and he made no complaint, but that in a few days the place began to swell, and a great amount of pus to accumulate at the said place, and that within eight or nine days a very large rising had developed at the said place as a result of said bruise. That by reason thereof he had to take his bed and procure the treatment of a doctor for five or six weeks, during all of which time he suffered intense pain. He did not state to us the exact amount of his doctor's and medical bill, but we inferred that it was something over fifty dollars; that he has never fully recovered from the effects of the said bruise; and that he alleges his damages to be the sum of $500, which is offered as a compromise. Please have the company take the matter up with us if it desires to make settlement. Yours very truly, [Signed] Nunn & Love, Attorneys for S. D. Sullivan."

The plaintiff objected to the letter upon the ground of immateriality and because it was an offer of compromise, which objection was sustained. The plaintiff testified that he made no claim against the defendant until the date of the letter, January 19, 1911; stated that he had talked with his attorneys, Nunn & Love, about making the claim, and the amount for which it should be filed, and instructed them to file the claim. In so far as the record shows, this letter was the first notice the defendant had of the plaintiff's injury, or that he was asserting any claim against the defendant therefor. According to the plaintiff's testimony at the time this letter or claim was prepared he had already suffered a considerable portion of the injuries of which he complains; and his attorneys who prepared the document must have known that, if the defendant was liable, the plaintiff was entitled to compensation, not only for the injuries that had accrued up to that time, but also for those which might result in the future. This being the case, it was certainly very material, if the defendant could show that the plaintiff has admitted that $500 was all the damages he was entitled to claim. Hence we hold that the excluded testimony was material. But it is insisted on behalf of appellee that the document referred to was properly excluded because it showed upon its face that it was an offer to compromise.

[4] There is some plausibility in that proposition; but we do not think it will stand the test of correct analysis. We recognize the rule that when parties disagree, and one offers to take less than he claims, or the other offers to pay more than he contends he is liable for in order to prevent litigation, it is not permissible, upon a trial of the case, to prove that such offer to compromise was made. But this case does not come within that rule. At the time that this document was prepared and delivered to appellant's agent, it does not appear that appellant had denied liability, or that there was any disagreement between the parties as to what sum would constitute adequate compensation. Furthermore, while it is stated on the face of the document that it was an offer to accept $500 as a compromise, it is manifest from the statement which immediately precedes that it was not, and could not be, an offer to compromise. The preceding statement was that the plaintiff alleged his damages to be $500. Now there can be no offer to compromise by a plaintiff unless he makes a concession and offers to reduce the amount of his claim, and no such offer was made in this case. On the contrary, the offer was to accept the full amount of damages to which the plaintiff stated he was entitled; and, for the reasons stated, this was no offer to compromise, although it was so denominated in the instrument. Considering all the testimony bearing upon the extent of the plaintiff's injuries, present and prospective, we find that the verdict of the jury is large; but in saying this we do not mean to hold that it is excessive in the sense which would require a reversal.

[5] What we do hold is that, on account of the size of the verdict, we think the exclusion of this material testimony requires a reversal. We do not hold that the excluded document is conclusive, because the plaintiff has the right, if he can, to explain why he fixed the amount of his damages at only $500 at that time, and to show, if he can, that in fact they were in excess of that sum. Nevertheless, as it appears upon its face, the letter contains a written admission which he has made, and which it is the right of the defendant to have placed before the jury to be considered by them in determining how much, if any, the plaintiff should re-

cover. In support of our ruling holding that this document is admissible, we cite 16 Cyc. p. 948; and we quote as follows from St. L. S. W. Ry. v. Smith, 33 Tex. Civ. App. 520, 77 S. W. 28: "Appellee caused to be made a detailed statement of the injuries inflicted upon his stock, and the amount of his damages in consequence, and presented the same to the Texas & Pacific Railway Company, one of the defendants in this suit. This was done at a time, it seems, when there had been no negotiations pending between the parties looking to a settlement, and the amount then claimed ($95) purported to be the entire amount of his damages. Although the appellee then and at the time of trial denominated the transaction an offer to compromise, it does not appear to have been such. As said in an Indiana case: 'A party cannot render an admission incompetent by testifying that he intended it to bring about a compromise, unless there was in fact an honest controversy between the parties and a treaty, pending or proposed, to settle it without resort to litigation.' Steeg v. Walls, 4 Ind. App. 18, 30 N. E. 312; Hood v. Tyner, 3 Ind. App. 51, 28 N. E. 1033. The evidence was competent as tending to contradict appellee's statements as to the extent of the injuries received and the amount of damages he had sustained. Ft. W. & D. C. Ry. v. Lock, 30 Tex. Civ. App. 426, 70 S. W. 456. And, being admissible, it was an invasion of the province of the jury for the court to say the evidence should have this or that effect. The jury, and not the court, should say whether, considering appellee's other testimony explaining that the injuries to his stock had not developed at that time, his admissions were binding upon him, since, as we think, the evidence was more in the nature of an admission of fact than of an offer to compromise. Compromise involves the idea of making a concession for the sake of peace; but rendering a statement of one's injuries, with a demand for the utmost farthing, is quite another thing."

The assignments presenting other questions are overruled; but, on account of the error referred to, the judgment is reversed and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

After careful consideration of appellee's motion for a rehearing, we have found no sufficient reason for changing the views expressed in our former opinion. We concede that our decision is in conflict with the decision of another Court of Civil Appeals in Railway Co. v. Kern, 100 S. W. 971, and we trust that the fact of such conflict will be held to confer jurisdiction upon the Supreme Court, where the question of law, upon which we hold that the case should be reversed, can be finally settled.

As to the true principle upon which the rule rests which excludes statements made while attempting to effect a compromise, and as to when that rule should be enforced, we concede that much contrariety of decision exists. Professor Wigmore, in his recent and valuable treatise on Evidence, says that the true reason for excluding an offer of compromise is that it does not ordinarily proceed from or imply a belief that a particular fact exists, but rather a belief that the further prosecution of the claim would in any event cause such annoyance as is preferably avoided by making a concession; and we quote as follows from that author: "By this theory the offer is excluded because, as a matter of interpretation and inference, it does not signify an admission at all. There is no concession of claim to be found in it, expressly or by implication. It would follow, then, conversely, that if a plain concession is in fact made, it is receivable, even though it forms part of an offer to compromise; and this much has long been well understood." 2 Wigmore on Evid. § 1061.

A later, and equally valuable, treatise on the same subject uses this language: "The peace offer may have been made by a plaintiff who agrees to accept a payment of money or other act in discharge of his claim, not as constituting a measure of his true demand, but as a concession made as an inducement for the purpose of obtaining an adjustment. If such an offer should not be accepted by the alleged debtor, the fact of his concession on account of a consideration which has failed should not prevent the plaintiff, if forced, after all, to resort to legal proceedings, or to continue them, if already begun, from recovering on his entire claim with the same effect as if his suggestion in the interest of harmony had not been made. In other words, the party who declares that he is willing to accept a given equivalent for his claim is entitled to insist, if his offer be refused, that he shall not be prejudiced by having made it. Nor should he be permitted to suffer from having intimated a willingness to consider a peace offer if his adversary should see fit to make one. That the plaintiff should thus avoid the effect of his statement, it must affirmatively appear that a bona fide desire existed on his part to adjust a disputed claim in this way rather than to formulate a demand which was then really relied upon by him as the limits of his just rights. Where the statement is made not for the purpose of compromise, in the sense of buying immediate peace, but for attaining a different, though somewhat similar, object (e. g., to procure an arbitration), the statement is available as an admission. The typical peace offer is perhaps more frequently made by the debtor than by the creditor, by the defendant than by the plaintiff. Whichever party may make it, the rule of procedure is the same. Such an offer, or, in case something is actually claimed or conceded on account of its truth, so much of the offer as

is made by the party, not because he believes it to be true and just, but because he hopes to avoid, by making it, the annoyance and expense of litigation, will be denied all evidentiary force as an admission. The circumstances attending the making of such offer will not be permitted in any way to operate to his prejudice." 2 Chamberlayne on Evid. §§ 1445, 1446, 1447.

In the case at bar the plaintiff stated in the letter, which we held was admissible against him, that he alleged his damages to be the sum of $500, which he offered to accept as a compromise. As stated in our former opinion, when the letter is put in evidence, the plaintiff will have the right to give testimony explaining to the jury why he fixed that sum as the total amount of his damages; but the appellant will have the right to contend that it constituted a statement that he was only entitled to $500 as compensation for the injury which he had sustained. We do not hold that the jury would be compelled to accept that sum as the total amount which the plaintiff is entitled to recover, if the defendant is held liable; but we adhere to our holding that appellant has the right to have the jury consider the statement referred to in determining how much the plaintiff is entitled to recover.

As shown by other sections in the textbooks referred to, the modern tendency is to depart from the strictness with which some courts have enforced the rule excluding such testimony, and to admit in evidence many statements formerly held to be inadmissible; and one of the authors referred to says: "As a matter of logic no reasonable question can exist as to the right of any litigant to seek to establish such a fact. If the claim of the party in question that he did not mean what he has said or intend the implications of what he has done is obviously a circumstance proper for the consideration of the jury, it may fairly be regarded as an infirmative consideration affecting the weight of the evidence, viewed in its assertive capacity. Whenever it occurs that one of two equally legitimate inferences may rationally be drawn from the doing by a person of a given act, or the making of a particular statement, it is, in point of reason, proper to submit to the jury, under appropriate instructions, the question as to which is the proper conclusion for the mind to reach. Where the jury, as reasonable men, might find that a given statement now said by the declarant to have been made by way of compromise, was, in reality, an admission, an entire exclusion of the evidence is often far too severe an administrative expedient to be employed by a court of justice for the protection of a rule of public policy, however salutary. The peculiarity of the procedural rule in question, therefore, is this: It absolves the declarant from any obligation to explain that he made his concession of liability for the sake of buying peace, leaving to the jury to determine how far such is the fact. The rule refuses to recognize any logical or reasonable possibility that any other motive could have influenced the litigant's conduct if the hope of buying peace might have done so." 2 Chamberlayne Evid. § 1449.

Motion overruled.