**MILLER SEED COMPANY et al.,**
**Appellants,**

v.

**A. W. POOL, Appellee.**

**No. 8416.**

Court of Civil Appeals of Texas,
Amarillo.

March 25, 1974.

Rehearing Denied April 22, 1974.

---

**152**

Witherspoon, Aikin, Langley, Woods, Kendrick & Gulley, Earnest Langley, Hereford, for appellants.

Richards & Ferguson, Robert C. Ferguson, Dalhart, for appellee.

ELLIS, Chief Justice.

This suit arose out of a contract between a seed company and a landowner involving the growing of certified hybrid grain sorghum seed. On the basis of certain jury findings, the trial court entered judgment in favor of A. W. Pool, the landowner, against Miller Seed Company, a partnership and its partners, Glenn E. Miller and wife, Ann J. Miller, for lost profits resulting from the seed company's alleged breach of the contractual condition or warranty by approving the landowner's tract of land for the seed growing project. Miller Seed Company and the partners thereof, herein known as "Miller," brought this appeal. Reversed and rendered.

In May, 1970, Townsend, an agronomist employed by Miller, contacted Pool, a farmer living in Sherman County, Texas, concerning the production of hybrid seed for Miller. Thereafter, Townsend, on behalf of Miller, and Pool entered into a written "growers" contract. By the terms of this contract, Miller was to pay $4.30 per hundred pounds of "clean seed basis for (ms) seed." The contract specified that the seed had to be 98.50 pure and contain no noxious weeds. Townsend inspected and approved a 160 acre tract of Pool's land for the purpose of growing the hybrid seed. Pool was to be paid the market price for grain if the seed failed to meet specifications. Under the contract, 120 acres of the 160 acre tract was to be planted in "ms parent" (male sterile—female) seed and the remaining 40 acres was to be planted in pollinator (male) seed. Generally, the seed company agreed to furnish certain supervisory services and instruction in connection with the growing of the crop by the farmer. The farmer was required to perform the farming operations and to exercise good judgment in conducting such farming operations under the instructions and directions of the seed company.

The land was planted and the crop was subsequently harvested. There was an average yield of approximately 834 pounds per acre on 120 acres of the 160 acre tract

and approximately 3,200 pounds per acre on the remaining 40 acres. This yield was considerably less than the 6,000 pounds per acre yield which Pool alleged and which the jury found would have been produced on the 160 acre tract had Pool grown commercial milo instead of attempting to grow hybrid seed. Further, an inspection revealed that approximately one-half of the crop grown for seed was infested with Johnson grass and therefore did not meet the standards for purity required by the contract. Miller paid Pool the contract price of $4.30 for that portion of the crop which met the contractual purity standards for the hybrid seed, and Pool was paid the market price of commercial milo for the portion of the crop which did not meet such standards.

Pool subsequently brought suit against Miller, alleging, among other matters, that Miller, through his agent Townsend, breached his duties in a number of respects, particularly with regard to his direction as to planting times and in connection with his efforts to coordinate the blooming of the pollinator and female plants, and that all of Townsend's various acts of incompetence constituted a breach of express and implied contractual warranty. Alternatively, he pleaded that upon the basis that Townsend contacted Pool regarding the growing of the seed, Townsend approved the land for the purpose and thereby induced Pool to raise hybrid seed instead of commercial milo; and that he suffered damages thereby in the sum of $14,971.96, the amount of additional profit he would have made had he grown commercial milo instead of attempting to grow hybrid seed.

This cause was submitted to the jury upon special issues. However, with respect to all of Pool's complaints about improper planting times, improper corrective efforts, and other matters pertaining to the appellee's conduct with respect to the crop, the jury found in favor of the appellants, or in a manner that afforded Pool no relief, with the exception of the answers to issues nos. 1E, 1F and 1G, which issues and answers are set out as follows:

"Issue # 1E

"Do you find from a preponderance of the evidence that Townsend approved Plaintiff's land for the production of hybrid seed in 1970?

\*    \*    \*    \*    \*    \*

"Answer: yes

"If you have answered issue 1E 'Yes', and only in that event, answer the following issue:

"Issue # 1F

"Do you find from a preponderance of the evidence that Pool relied on such approval, if any, in entering into the grower contract?

\*    \*    \*    \*    \*    \*

"Answer: yes

"If you have answered issue 1F 'Yes', and only in that event, then answer the following issue:

"Issue # 1G

"Do you find from a preponderance of the evidence that as a result of such reliance, if any, Pool suffered damages?

\*    \*    \*    \*    \*    \*

"Answer: yes"

The record reveals that if the judgment entered is to be sustained, it must be done on the basis of the above quoted issues and answers. Both Pool and Miller moved for judgment. The trial court entered judgment in Pool's favor on the basis of the above findings in the sum of $14,971.96, plus interest, the principal sum being the amount claimed as damages in the form of lost profits by reason of Miller's approval of the land for the project, and Pool's reliance upon such approval in entering into the contract. From this judgment Miller brought this appeal upon 22 points of error.

■ Points of error nos. 1–15 include generally the appellants' contentions that

the trial court erred in basing its judgment on the jury's answers to issues nos. 1E, 1F and 1G because such answers do not provide any factual basis for any theory of recovery or cause of action against the appellants. Specifically, appellants contend that each of such issues were improper issues, erroneously submitted over the appellants' objections; and that the findings with respect to Miller's approval of the land for growing seed, Pool's reliance upon such approval and damages resulting from such reliance form no basis for judgment against appellants in that (1) there is no finding, pleading nor evidence to support an implied finding that the approval was erroneous or wrongful, (2) appellee's reliance on such approval was wrongfully induced by appellants, or (3) the damages resulted from any wrongful conduct on appellants' part. In this connection, appellants contend that such issues should not have been submitted, because the "approval" and "reliance" issues are not controlling issues, since both parties necessarily relied upon the approval of the land as a necessary precedent for entering into the contract, and such approval or reliance would not be actionable or constitute any basis for inquiry concerning damages related thereto unless the approval was wrongful and the reliance wrongfully induced.

In points nos. 16 and 17, appellants contend that the court erred in refusing to enter judgment for appellants and in overruling appellants' motion for judgment in their favor on the verdict of the jury. Point no. 18 relates to appellants' contention that the court should have set aside the judgment rendered in appellee's favor, and in point no. 19, the appellants contend, alternatively, that if the judgment should not be reversed and rendered in appellants' favor, then it should be reversed and the cause remanded for a new trial. Points nos. 20–22, submitted alternatively, relate to the appellants' contentions regarding erroneous computations of damages and improper award of interest.

Appellee contends that appellants' points concerning the court's error in basing its judgment upon the jury's answers to issues 1E, 1F and 1G should not be considered on appeal because they have not been preserved for appellate review and are therefore waived. In this connection, he contends that Townsend, an "expert," approved the land without making necessary investigation concerning dormant Johnson grass seeds and represented to Pool that he would make proper investigations and give instructions so that the venture would be a success, and that Pool relied on these representations. Pool contends that the land was in fact unsuitable for raising hybrid seed which fact constituted a breach of a material condition upon which Pool relied in entering the venture. He further argues that Miller did not request or submit any issues regarding the suitability of the land for the production of seed or with respect to the propriety of the approval of the land. He further states that the appellants' objections to the submission of issues 1E, 1F and 1G did not meet the requirements of Rules 272 and 274, Texas Rules of Civil Procedure, regarding the objections to the court's charge, by calling to the court's attention the alleged vice in the submission of such issues and in failing to submit issues relating to the investigation or approval of the land.

The record discloses that in their objections to the submission of issues 1E, 1F and 1G, the appellants particularily objected to the submission of the issue on "approval" because that matter was uncontroverted and should not have been submitted. Thus, the finding that the land had been "approved" could not properly form the basis for an implied finding of "wrongful" or "improper" approval.

Although the objections concerning the failure to submit the issues concerning the propriety of the approval of the land were not included in the appellants' objections to the charge, we note that the issue as to whether the land was suitable for approval

was not a defensive issue. The appellants and defendants were not required to have this issue answered in their favor to sustain a defensive theory. Such issue was in fact a part of the plaintiff's suit, for he was required to plead and prove to the trier of the facts that the land was not suitable for the purpose intended and should not have been approved. It is our opinion that findings in this regard are necessary to support the appellee's "alternate" theory of recovery. Since appellee made no objection to the charge by reason of the court's failure to submit such issues as a basis for these essential findings, or requested no issues to enable the jury to make the necessary findings as a basis for liability against the appellants, the appellee relies upon "presumed" findings to support the judgment.

■■ The "approval" must be shown to be wrongful before liability can be established for damages resulting from reliance upon such approval. It is fundamental that the burden of proof that the appellants' conduct regarding the investigation or the approval of the land was wrongful, and thus constituted a breach, was upon the plaintiff, and since he requested no issues pursuant to Rules 272 and 274 as a basis to enable the jury to make such finding, he relies upon the implied finding in this regard to support the judgment. In view of the foregoing, we overrule the appellee's contentions that the appellants' points regarding the court's error in basing its judgment on the jury's answer to issues 1E, 1F and 1G have not been preserved for appellate review.

■■ The substance of Pool's contention in support of the judgment is that the damages for lost profits arose from the improper approval of the land, which, he contends is a breach of condition or warranty by the seed company that the land was suitable for growing the hybrid seed. Appellee argues that although no issue was submitted regarding the propriety or impropriety of Townsend's investigation of

the land for the purpose of growing hybrid seed, in the absence of appellants' objection to the failure of the court to submit issues in this regard, the parties waived a jury trial on such issues, and the jury having made findings on other submitted material issues, the court was deemed to have found on such omitted issues in such a manner as to support the judgment. However, the court cannot presume a finding unless there is evidence to support such a finding. Warren Petroleum Corp. v. Martin, 153 Tex. 465, 271 S.W.2d 410 (1954). Likewise, if there is no evidence to support the finding on an omitted issue, such finding cannot be presumed. Heights Savings Association v. Cordes, 412 S.W.2d 372 (Tex.Civ.App.—Houston 1967, no writ). Further, in determining whether there was any evidence to support the implied findings and the judgment, it is proper for the reviewing court to consider the evidence in the light most favorable to the judgment. Alamo Express, Inc. v. Browning Mineral & Ore Co., 457 S.W.2d 588 (Tex.Civ.App. —San Antonio 1970, writ ref'd n. r. e.); Calvert, "No Evidence and Insufficient Evidence Points of Error," 38 Texas L. Rev. 361 (1960).

■ In this case, it is our opinion that "approval" of the land by Townsend would constitute an actionable wrong against Pool only if such approval was wrongful. The fact of approval was uncontroverted. It is here noted that Pool did not allege that the approval was wrongful, but he alleged that Townsend's investigative efforts were not "fit for the purposes contemplated by the parties" and that Miller had breached a contractual warranty to Pool by reason of Townsend having "inaccurately and improperly carried out the investigation of the land."

The record reveals no evidence upon which a finding of unfit, inaccurate or improper investigation could have been made. Pool had farmed the tract in question since 1963 and knew the extent to which it had been infested with Johnson grass. Townsend, in talking with Pool about any John-

son grass problems, was told by Pool that while there had been some Johnson grass on the tract "several years before," the tract had been "clean the previous two years." Townsend also inquired as to what crops had been previously grown on the tract as well as what had been grown and would be grown in 1970 on the neighbor's land. Townsend walked over the tract and thoroughly inspected it and the barrow ditches to the east and south of the land before he approved the land. It is undisputed that the inspection took place in May when no Johnson grass was visible and Pool admitted that both he and Townsend looked "as carefully as a person would know how to look," but that no Johnson grass was visible. Even if Johnson grass seedlings were in the ground when the tract was approved, there is no evidence that Townsend could have done anything to detect the presence of such seed, or that Townsend, in any way, inaccurately or improperly investigated the tract or improperly approved it for the purpose of raising hybrid seed. The jury found that Miller approved the land, Pool relied upon such approval and damages resulted from such reliance. These facts found by the jury, and upon which the judgment has been based, in our opinion, are inadequate and insufficient, in that there is no finding that inspection and subsequent approval was improperly or wrongfully made by the seed company. A considerable portion of the information secured regarding the status of the land, in addition to Townsend's own observation, was obtained from Pool's representations, and, at the time, there appeared to be no reason why Townsend could not or should not rely upon them. In fact, if both parties had not "approved" the land for the project there would have been no contract.

After a review of the entire evidence in a posture most favorable to the judgment, we find no evidence of probative force upon which the trial court could have based an implied finding that Townsend inaccurately or improperly investigated or wrongfully approved the tract in question for the

purpose of growing hybrid seed, or that Miller was guilty of any misconduct or breached any duty it might have had to Pool. We sustain appellants' points 1–19, and such disposition of these points relating to liability pretermits our passing upon the appellants' remaining points dealing with the computation of damages.

The appellee has submitted three cross-points upon which he relies alternatively for a remand in the event of a reversal of the judgment in his favor. These cross-points pertain to the appellants' objection to the admission of certain evidence or the failure of the court to give requested instructions relative to certain evidence admitted during the course of the trial.

As previously indicated, the appellee based his motion for judgment for lost profits upon the jury's answers to special issues 1E, 1F and 1G, including the findings that Miller approved the land for the seed growing operation, Pool's reliance upon such approval and the damages resulting from such reliance. The remainder of the issues were answered unfavorably to Pool or in a manner which would not authorize recovery by him. We note that the cross-points do not specify answers to specific issues which may have been affected by the admission of the alleged objectionable evidence or by the court's failure to give the requested instructions.

In his first cross-point, appellee contends that Defendant's Exhibit No. 1 was erroneously admitted for the reason that it was hearsay, the information contained was too remote, and it was not authenticated as business records of Miller Seed Company. Exhibit No. 1 contained certain data relating to "splitting" the planting dates regarding the pollinator and the "ms parent" seed in various localities, along with other general research data appearing to be of a nature normally used by seed companies in connection with the production of hybrid seed. This data appeared to be generally consistent with testimony given by Townsend concerning the

details of the operation; however, substantially the same or similar information was provided by other testimony and evidence not objected to, and this data was essentially cumulative of other evidence given concerning the production of hybrid seed. Although the information may be regarded as hearsay, or not sufficiently proven as business records, the burden was upon Pool to show that the evidence would probably cause an improper answer to the questions relating to the procedures about which inquiries were made. The detailed instructions concerning the growing of hybrid seed were given by Townsend who testified directly concerning the matters included in the data, and he was subject to cross-examination regarding all such information. Reversible error is not ordinarily shown in connection with rulings on questions of evidence unless the whole case turns on the particular evidence in question. Bridges v. City of Richardson, 349 S.W.2d 644 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e., 354 S.W.2d 366 (Tex. 1962)). Also, the introduction of data which was not direct factual evidence on the issues and could not have had more than an indirect or insubstantial bearing on the jury's answer, does not present a ground for reversal. Cudmore v. Richardson—Merrell, Inc., 398 S.W.2d 640 (Tex. Civ.App.—Dallas 1965, writ ref'd n. r. e., cert. denied 385 U.S. 1003, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967)). Appellee's first cross-point is overruled.

■ In his second cross-point, appellee contends that an expert witness Doctor Coffey, was erroneously permitted to answer hypothetical questions by appellants' counsel that did not fully include the evidence in the record at that time with reference to the matters inquired about. In his third cross-point, appellee complains that the trial court erroneously refused to instruct the jury not to consider Doctor Coffey's answers to the hypothetical questions because the questions did not fairly include all the evidence in the record pertinent to the matters inquired about. We have carefully examined the area of examination complained of, pertaining, among other matters, to the moisture conditions, or stress on the plants during the pollination period, and although there appeared to be some inconsistency in the testimony previously given regarding these matters, from our review of the record and consideration of all the testimony submitted, we do not perceive that any prejudicial harm resulted from the testimony or from the failure of the court to give the requested instruction to disregard the testimony. See Wheatheart Feeders, Inc. v. Pletcher, 453 S.W.2d 902 (Tex.Civ.App.—Amarillo 1970, writ dism'd). Also, in the light of other testimony in the record, the weight and strength of which the court is entitled to appraise and consider, we believe that no reversible error was committed in admitting the expert's testimony and in refusing the requested instruction. See Hundere v. Tracy & Cook, 494 S.W.2d 257 (Tex.Civ. App.—San Antonio 1973, writ ref'd n. r. e.). Further, it is our opinion that the appellee did not sufficiently establish that the admission of such evidence, even if erroneous, was reasonably calculated to cause and probably did cause an incorrect answer to any particular issue. Mueller v. Central Power & Light Company, 403 S.W.2d 901 (Tex.Civ.App.—Corpus Christi 1966, no writ). We overrule appellee's second and third cross-points.

There is no contention that the evidence was not fully developed in this case. Further, we have found no merit in appellee's cross-points concerning the admissibility of evidence or the court's failure to give the requested instruction, and thus a remand is not warranted.

For all of the reasons above stated we find no legal basis to support the judgment awarding damages to Pool for lost profits. Accordingly, the judgment of the trial court is reversed and judgment is herein rendered that plaintiff-appellee take nothing by his suit.